UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOHN TAYLOR                                                                                    PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:16CV821 DPJ-FKB

NISSAN NORTH AMERICA                                                                  DEFENDANT

ORDER

This personal-injury action is before the Court on Defendant Nissan North America's

motion to dismiss [12] pursuant to Federal Rule of Civil Procedure 12(b)(6). Nissan contends

that Plaintiff John Taylor's claims are barred by the exclusivity provision of the Mississippi

Workers' Compensation Act (MWCA). Taylor has responded in opposition. The Court, having

considered the memoranda of the parties and the pertinent authorities, finds that Nissan's motion

should be denied.

I.        Facts and Procedural History

John Taylor filed this suit against Nissan, his former employer, for injuries he sustained

due to repeated exposure to formaldehyde gas emissions. He says Nissan knowingly required

him to work in areas with unsafe levels of formaldehyde emissions and actively concealed the

harmful levels of formaldehyde in the plant. In his Complaint, he advances intentional-tort

claims, including misrepresentation, battery, intentional infliction of emotional distress, civil

conspiracy, fraud, and intentional misrepresentation.

Nissan argues that all claims are subject to dismissal based on the exclusivity provision of

the MWCA. Miss. Code Ann. § 71-3-9 ("The liability of an employer to pay compensation shall

be exclusive and in place of all other liability of such employer to the employee . . . on account

of such injury or death . . . ."). Taylor opposes dismissal, arguing that his claims fall within the

intentional-tort exception to the MWCA. *See Bowden v. Young*, 120 So. 3d 971, 976 (Miss. 2013) (examining intentional-tort exception). In his response, Taylor alternatively asks for an opportunity to amend his Complaint, should the Court find his allegations are insufficient. The motion is fully briefed, and the Court is prepared to rule.

## II.      Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).

## III.     Analysis

The primary question for the Court is whether Taylor's allegations fall within the intentional-tort exception to the MWCA. For a "willful tort to be outside the exclusivity" of the MWCA, the employer's action must be done "with an actual intent to injure the employee." *Griffin v. Futorian Corp.*, 533 So. 2d 461, 464 (Miss. 1988) (internal quotation marks and citation omitted). "[A] mere willful and malicious act is insufficient to give rise to the

intentional tort exception to the exclusive remedy provisions of the [MWCA]." *Blailock v. O'Bannon*, 795 So. 2d 533, 535 (Miss. 2001). Similarly, "[r]eckless or grossly negligent conduct is not enough." *Id.* (citation omitted). Instead, "the plaintiff must allege and prove that the employer acted with an actual intent to injure the employee, with full knowledge that the employee would be injured and with the purpose of the action being to cause injury to the employee." *Bowden v. Young*, 120 So. 3d 971, 976 (Miss. 2013).

This standard is admittedly difficult—though not impossible—to satisfy. *See Pinnacle Trust Co. v. Babcok & Wilcox Power Generation Group, Inc.*, No. 1:11CV02 SA-SAA, 2013 WL 5674381, at 3–7 (N.D. Miss. Oct. 17, 2013) (collecting cases and granting summary judgment in favor of employer on claim that employee's lung cancer was caused by exposure to hexavalent chromium compounds); *see also Peaster v. David New Drilling Co., Inc.*, 642 So. 2d 344 (Miss. 1994) (affirming grant of summary judgment in favor of employer); *Griffin v. Futorian Corp.*, 533 So. 2d 461, 464 (Miss. 1988) (affirming grant of summary judgment in favor of employer on claim that employee was injured twice by lumber sawing machine); *but see Franklin Corp. v. Tedford*, 18 So. 3d 215, 231 (Miss. 2009) (affirming jury verdict in favor of employees for injuries tied to exposure to adhesive chemicals and finding no error in denial of employer's motion to dismiss and motion for summary judgment); *Blailock v. O'Bannon*, 795 So. 2d 533, 535 (Miss. 2001) (reversing dismissal of action in favor of employer where the employee was physically assaulted by a management-level employee).

Taylor's suit centers around his alleged exposure to formaldehyde gas, which is a byproduct of the paint-curing process used by Nissan. On October 21, 2015, Nissan required Taylor to perform maintenance in the LCV-oven area within the paint plant without a respirator or other personal protective equipment. Taylor claims Nissan knew the emission levels of

formaldehyde gas in this area were "significantly above the permissible exposure limit" set by the Occupational Safety and Health Administration (OSHA). Compl. at 3. After four hours of exposure, Taylor experienced dizziness, nausea, difficulty breathing, exhaustion, confusion, and memory loss. He also observed "burn-like markings around his face and eyes." *Id.* Taylor reported his symptoms to his supervisor, attributing them to the formaldehyde gas. His supervisor "made a comment to the effect that he hoped he would never have to send Plaintiff back to work in the area again." *Id.*

Three days later, Taylor had a seizure at home and sought medical attention at University of Mississippi Medical Center (UMMC), where physicians told him not to return to similar work until cleared by a neurologist. In response, Nissan initiated a workers' compensation claim. On October 27, 2015, Nissan's on-site medical clinic diagnosed Taylor with "chemical gas exposure," setting a work restriction of "no contact with formaldehyde gas." *Id.* at 4. But on November 3, 2015, the medical clinic returned Taylor to full duty, despite UMMC's instruction that he wait until cleared by a neurologist. After Taylor complained to his workers' compensation agent, Nissan returned Taylor to restricted duty.

On November 4, 2015, UMMC Neurologist Dr. Jimmy Wolfe diagnosed Taylor with "new onset seizures and toxin exposure related to the formaldehyde gas emissions from [Nissan's] plant." *Id.* at 5. Over the coming months, Taylor continued to experience seizure-related symptoms and sought follow-up care with a second neurologist, Dr. Ruth Fredericks. Dr. Fredericks confirmed the diagnosis of seizure disorder caused by chemical exposure and recommended that Taylor be laterally transferred to a different area to avoid further formaldehyde exposure and that he be provided a respirator if forced to work in the paint plant. *Id.*

Nevertheless, on August 18, 2016, Nissan required Taylor to perform maintenance on the Paint 1 Prime oven without a respirator. After forty-five minutes, Taylor experienced seizure-related symptoms. Then, on August 26, 2016, Nissan again dispatched Taylor to work on another prime oven in the paint plant without a respirator. This time, Taylor observed visible "smoke" and again experienced seizure-related symptoms, requiring emergency treatment.

Taylor says that Nissan knew "there was an inspection door seal leak on the Paint 1 E-coat oven [ ] and that it was emitting harmful formaldehyde gas and smoke where [he] would be working." *Id.* at 6. He submits Nissan had scheduled repairs for August 28, 2016, but sent him "into the area without a respirator knowing the area was dangerous and would cause [him] harm." *Id.* On September 8, 2016, Dr. Wolfe placed Taylor on a "permanent work restriction to avoid chemical exposure at levels near or above OSHA standards." *Id.*

Based on all of this, Taylor claims that Nissan intentionally and repeatedly exposed him to formaldehyde gas, ignoring his requests for a respirator. *Id.* He insists that Nissan knew that emission levels near the LCV ovens were well above OSHA regulations and intentionally provided false and misleading sampling of formaldehyde emissions to conceal the true levels. *Id.* at 7, 8. Taylor maintains that Nissan intended to cause him harm by continually exposing him to formaldehyde gas emissions without protection. *Id.* at 9.

Whether these allegations are enough to prevail is a question for another day. But at the motion-to-dismiss stage, the question is whether Taylor has pled "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 70. "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556). Viewing the facts in the light most favorable to Taylor,

the Court finds he has stated a plausible claim. Nissan's motion to dismiss based on the exclusivity provision of the MWCA is denied.

Alternatively, Nissan argues that Taylor's fraud and intentional-misrepresentation claims were not pled with particularity as required by Rule 9(b). Generally, a plaintiff must identify the fraudulent statement, the speaker, and when and where the statement was made. *See Dorsey v Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008); *EDW Investments, LLC v. Barnett*, 149 So. 3d 489, 493 (Miss. 2014). Notably, however, "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

Taylor submits that he has alleged "Nissan had knowledge of the harmful chemical gas emissions within certain areas of the plant, but intentionally withheld and/or misrepresented this information in an intentionally [sic] effort to deceive the Plaintiff that his work environment was safe." Resp. [15] at 11. Taylor claims:

> Nissan took affirmative action to withhold information concerning (1) the results and/or accuracy of formaldehyde sampling data, (2) the concentration of formaldehyde gas with visible "smoke" inside the paint plant, (3) the known leaks identified by preventative maintenance personnel, [and] (4) the known formaldehyde emissions leaks which Nissan had scheduled for repairs, but exposed the Plaintiff to before repairs were made.

*Id.*

Thus, it appears that Taylor's claims could be fairly characterized as fraudulent concealment, which requires a showing that Nissan "took some action, affirmative in nature, which was designed or intended to prevent and which did prevent, the discovery of the facts giving rise to the fraud claim." *Davidson v. Rogers*, 431 So. 2d 483, 485 (Miss. 1983) (noting the "omission or concealment of material facts can constitute a misrepresentation, just as can a positive, direct assertion"); *see also* Resp. [15] at 11 (citing *Smith v. Union Nat. Life Ins. Co.*, 187 F. Supp. 2d 635, 650 (S.D. Miss. 2001) (same)). At this stage, Taylor has sufficiently

alleged facts detailing a fraudulent-concealment claim; Nissan's motion to dismiss under Rule 9(b) is denied.

IV.    Conclusion

The Court has considered all arguments raised by the parties; those not specifically addressed would not have changed the result. For the reasons given, the Court finds the motion to dismiss should be denied.

As stated, Taylor alternatively requested an opportunity to amend his Complaint. As pointed out by Defendant, Taylor did allege facts in his response that are arguably not contained in his Complaint. *See* Def.'s Reply [17] at 2 (delineating new allegations). Those new averments would push the needle even further past the plausibility threshold. If Taylor wishes to include them, he should separately move to amend his Complaint.

Finally, the parties are directed to contact Magistrate Judge F. Keith Ball to set the matter for a telephonic conference to lift the stay of discovery articulated in the January 25, 2017 Text Only Order and set all pertinent deadlines.

**SO ORDERED AND ADJUDGED** this the 23rd day of June, 2017.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE